**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RONALD KEMONI PETERSON,

Plaintiff,

v.

CHAD BOWEN, et al.,

Defendants.

No. 2:22-CV-0510-TLN-DMC-P

ORDER

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

The complaint identifies the following parties to this suit: The Plaintiff is an inmate proceeding pro se who is currently in the custody of the California Department of Corrections ("CDOC"). At the times relevant to this case, Plaintiff has been incarcerated in the California Medical Facility ("CMF") Vacaville and he is currently an inmate of the California State Prison ("CSP") Sacramento. Defendants (collectively referred to as "Defendants" unless indicated otherwise) Mr. CHAD BOWEN, Mr. NEDELCU, Mr. M. OSUNA, Mr. D. FOOTMAN, Ms. FLETCHER, Mr. ORMAN, Mr. BETTIS are present and/or former officials and employees of the CDOC at CMF Vacaville.

The complaint outlines several allegations of fact that underlie Plaintiff's case. On September 5, 2020, Mr. Bowen ("Bowen") and his partner Mr. Nedelcu ("Nedelcu") conducted a random cell search in Plaintiff's cell. See ECF No. 1 (Complaint), pg.11. During the search, Bowen inspected the air vent and discovered a cord tied to the vent's grate on the lower left side. See id. With the assistance of Nedelcu, Bowen pulled the string through the grate and retrieved an object tied to the string, later identified as "manufactured deadly weapon." See id. The retrieved object consisted of "one thin piece of black metal sharpened to a point on one end and wrapped with string resembling a handle measuring 6 inches and ¾ of an inch in length and ¼ inch in width." See id. at 12.

Upon retrieval, Bowen took the object, thereby allegedly contaminating it, secured it in his left pant pocket and informed the Program Office Sergeant about the discovery. See id. According to the complaint, a fingerprint analysis was never conducted, neither were photos of the object's location taken for purposes of documentation. See id. at 4, 13. Upon Mr. Footman's

1    ("Footman") authorization, Plaintiff was transferred into administrative segregation the same day
2    for "possession of a deadly weapon."  See id. at 12.  Plaintiff purportedly contested immediately
3    that the retrieved object was his and demanded further investigation, including but not limited to a
4    review of when the air vent in question was last inspected.  See id. at 12, 13.  Plaintiff asserts that
5    the air vent was not inspected prior to Plaintiff's move-in date and that the object retrieved by
6    Bowen and Nedelcu was planted in Plaintiff's cell by Bowen and Nedelcu to have him removed
7    to a different location.  See id. at 13.  According to the complaint, prior, similar cell searches had
8    never been as detailed as the one conducted by Bowen and Nedelcu that day.  See id.  According
9    to Plaintiff, the weapon was planted by Bowen and Nedelcu "acting in retaliation from prior
10   disagreements. . . ."  Id.

11           Following Plaintiff's demand to examine the incident, an internal investigation
12   was launched, providing Plaintiff with the opportunity to speak to staff investigator Ms. Fletcher
13   ("Fletcher").  See id.  Fletcher was subsequently replaced by Mr. Osuna ("Osuna") due to a stated
14   conflict of interest.  See id.  The complaint states that Osuna had been previously trained by
15   Fletcher and purportedly openly stated that he did not know what he was doing.  See id. at 14.
16   According to the complaint, several Defendants were denied testifying as witnesses in this matter
17   by the disciplinary hearing officer Mr. Orman ("Orman").  See id. at 15.  The complaint further
18   states that on November 13, 2020, the Associate Warden required the Rule Violation Report
19   ("RVR") related to the possession charge against Plaintiff to be reissued and reheard.  See id.
20   Plaintiff does not allege any facts related to the reissued and reheard RVR, though Plaintiff does
21   state that he "was placed in Ad-Seg [Administrative Segregation] and thereafter transferred from
22   a medium-security facility to a maximum-security facility.  Id. at 20.  Plaintiff also states that the
23   "suspended sanctions" were "reinstated" on September 9, 2021, presumably following a new
24   hearing on a reissued RVR.  Id. at 21.

25           Plaintiff's complaint alleges two causes of action arising from the foregoing facts.
26   See id. at 16-20.  First, Plaintiff asserts that Defendants Osuna, Footman, Fletcher, and Orman
27   interfered with his "protected right to communicate with prison officials" which resulted in
28   punitive measures imposed against him "in violation of the First Amendment. . . ."  The basis of

3

this claim appears to be Plaintiff's contention that he was denied the ability to question witnesses at a disciplinary hearing. See id. at 17. Second, Plaintiff alleges that Defendants have violated his right to procedural due process under the Fourteenth Amendment to the Constitution by employing constitutionally inadequate procedures "during the administration of disciplinary allegations." Id. at 18. While Plaintiff does not present a separate and distinct cause of action based on retaliation, as outlined above, Plaintiff claims Bowen and Nedelcu acted "in retaliation." Id. at 13.

Plaintiff alleges entitlement to injunctive and declaratory relief as well as compensatory and punitive damages. Specifically, Plaintiff request that the Court enter an order declaring that Defendants infringed on Plaintiff's constitutionally protected rights by violating due process and retaliating against Plaintiff. Moreover, Plaintiff wants the Court to issue an injunction to keep Defendants from interfering with the internal investigation and proceeding with Plaintiff's transfer from a medium- to a maximum-security facility.

Finally, the Court notes that Plaintiff references various exhibits through the complaint but that no exhibits are attached.

## II. DISCUSSION

Plaintiff pleads two separate claims relating to issuance of the RVR against Plaintiff based on possession of a weapon. Plaintiff also alludes to a retaliation claim against Defendants Bowen and Nedelcu. As discussed below, the Court finds that Plaintiff has not adequately pleaded any cognizable claims.

**A.  Retaliation**

Plaintiff claims that Defendants Bowen and Nedelcu "were corrupt officers acting in retaliation from prior disagreements and wanted Plaintiff out of the wing," therefore planting the retrieved object in the air vent of his cell in order to have Plaintiff transferred. See ECF No.1, pg. 13.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional

security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Liberally construed, Plaintiff's allegations satisfy the first element that prison officials took adverse action against Plaintiff by planting evidence as a pretext for Plaintiff's transfer to a maximum-security facility. Plaintiff has not, however, alleged sufficient facts to show that Defendants took such adverse action because Plaintiff engaged in protected activity. It remains unclear to which conduct Plaintiff refers when he mentions "prior disagreements" in his complaint. See id. Nor is it clear that any such "prior disagreements" were based on Plaintiff engaging in protected activity, such as filing a grievance or lawsuit. Plaintiff will be provided an opportunity to amend to the extent he seeks to pursue First Amendment retaliation claims against Defendants Bowen and Nedelcu.

   **B.**  **Disciplinary Proceedings**

Plaintiff claims that Osuna, Fletcher and Orman interfered with Plaintiff's right to communicate with prison officials in the disciplinary hearings following the cell search. See ECF No. 1, pg. 16. Plaintiff also claims that his procedural due process rights were violated when Defendants Bowen and Nedelcu withheld evidence and when the remaining named defendants interfered with Plaintiff's ability to investigate the disciplinary charges against him and did not allow him to ask questions at the hearing. See id. at 18-20.

The Due Process Clause protects prisoners from being deprived of life, liberty, or

property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

1            Where a prisoner alleges the deprivation of a liberty or property interest caused by
2   the random and unauthorized action of a prison official, there is no claim cognizable under 42
3   U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch,
4   494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-
5   deprivation remedy may be adequate even though it does not provide relief identical to that
6   available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred,
7   however, where the deprivation is foreseeable, and the state can therefore be reasonably expected
8   to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available
9   state common law tort claim procedure to recover the value of property is an adequate remedy.
10  See id. at 128-29.

11           Finally, with respect to prison disciplinary proceedings, due process requires
12  prison officials to provide the inmate with: (1) a written statement at least 24 hours before the
13  disciplinary hearing that includes the charges, a description of the evidence against the inmate,
14  and an explanation for the disciplinary action taken; (2) an opportunity to present documentary
15  evidence and call witnesses, unless calling witnesses would interfere with institutional security;
16  and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418
17  U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see
18  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the
19  record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill,
20  472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is
21  satisfied where "there is any evidence in the record that could support the conclusion reached."
22  Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result
23  of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by
24  way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

25           Here, Plaintiff appears to advance three separate procedural due process claims
26  relating to: (1) the claimed injury he has suffered from being transferred from a medium- to
27  maximum-security facility, (2) the cell search during which the supposedly planted object was
28  discovered, (3) the investigation following the object's discovery and the subsequent disciplinary

7

hearing.

> 1. **Plaintiff has no cognizable stand-alone due process right to remain in the medium-security facility, and, therefore, fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983**

The complaint alleges that, as a result from retrieving the object, Plaintiff was first placed into administrative segregation before being transferred to a maximum-security prison. See ECF No.1 (Complaint), pg.12, 20.  Plaintiff, however, has no constitutionally recognized liberty interest in remaining in the general population, see Sandin, 515 U.S. at 485-86, or in being placed in any particular institution, see Meachum, 427 U.S. at 225-27.  Moreover, Plaintiff cannot allege a liberty interest created by the state because placement in administrative segregation and transfer to a maximum-security facility does not create an atypical hardship which restrains Plaintiff's freedom in a way not contemplated by his sentence.  See Sandin, 515 U.S. at 483-84. Therefore, the Court finds that Plaintiff cannot proceed with a due process claim based on either his placement in administrative segregation or transfer to a maximum-security facility.

> 2. **Plaintiff's claim against Defendants Bowen and Nedelcu concerning the random cell search fails to sufficiently establish a due process violation**

Here, Plaintiff alleges that he was subjected to a random and unusually detailed cell search by Bowen and Nedelcu.  See ECF No. 1 (Complaint), pg.13, 18.  Plaintiff's complaint indicates that he was provided with a post-cell search investigation.  See id. at 13. As random or unauthorized actions are cognizable only if the State provides no post-deprivation remedy, the random cell search at issue, albeit detailed, is insufficient to advance a due process violation under 42 U.S.C. § 1983.  See Zinermon, 494 U.S. at 129-32; Hudson, 468 U.S. at 533.  Although Plaintiff has not expressly stated that he has or has not received a post-deprivation remedy, the opportunity of a prison disciplinary hearing post-cell search and object discovery provides an adequate state remedy.  Thus, Plaintiff cannot state a due process claim based on the cell search.

///

///

3. <u>Plaintiff's claims against all named Defendants regarding the investigation and conduct of the disciplinary hearings post-cell search does not currently contain allegations sufficient to allege due process violations in the proceedings</u>

In this case, Plaintiff states that he experienced a violation of his due process rights in the disciplinary proceedings following the cell search. <u>See</u> ECF No. 1 (Complaint), pg. 18-20. In particular, Plaintiff lists two claims: (1) against Bowen and Nedelcu for contaminating and withholding evidence and declining to answer questions for purposes of the disciplinary hearing; and (2) against Osuna, Footman, Fletcher, and Orman for interfering with the investigation by denying witnesses and answers to his question catalogue in the course of the disciplinary hearing, purportedly to prevent clearing Plaintiff of the charges brought up against him.

i. <u>Plaintiff's claim against Defendants Bowen and Nedelcu is deficient in that it fails to provide facts sufficient to support a due process violations for purposes of 42 U.S.C. § 1983</u>

The first claim against Bowen and Nedelcu appears to focus on the failure to conduct a fingerprint analysis on the object throughout the course of their investigation into the object's owner. <u>See id.</u> at 18-19. Additionally, the complaint makes mention of the defendants withholding documentation as to the last inspection of the air vent in which the object was discovered. <u>See id.</u> at 18. While Plaintiff contends that his opportunity to introduce documentary evidence in the prison disciplinary proceeding was adversely affected, he fails to sufficiently state which other opportunities he had, if any, to introduce evidence to the investigation.

Further, the complaint does not state that Plaintiff was provided with a written statement 24 hours prior to the disciplinary hearing, what charges were specifically brought up against him, and how this hearing was conducted. <u>Cf. id.</u> at 12-15. In the absence of the factual record of the proceedings, the claim of the due process violation against Bowen and Nedelcu solely hinges on Plaintiff's allegation that the evidence was contaminated, and documentation was withheld. However, this is insufficient. Plaintiff needs to provide further factual support to his due process claim regarding the conduct of the prison disciplinary proceeding. <u>See</u> <u>Wolff</u>, 418 U.S. at 563-70; <u>Walker</u>, 14 F.3d at 1420; <u>Superintendent</u>, 472 U.S. at 455.

Finally, further confusing matters, Plaintiff alleges in the complaint that the

1 associate warden ordered that the RVR be re-issued and that a new hearing be held.  Plaintiff does
2 not, however, indicate what happened at the new hearing, whether he was permitted to call
3 witnesses and present evidence, or whether he was ultimately found guilty on the re-issued RVR.
4 In this context, it is unclear what, if any, due process violation occurred.

Plaintiff will be provided an opportunity to amend to more fully outline facts relating to both the original RVR and hearing and the re-issued RVR and subsequent new hearing.

        ii.        Plaintiff's claim against Defendants Osuna, Footman, Fletcher and Orman is deficient in that it fails to provide facts sufficient to support a due process violations for purposes of 42 U.S.C. § 1983

Plaintiff's claim against Osuna, Footman, Fletcher, and Orman relates to their behavior in their respective capacities for purposes of the original prison disciplinary proceeding against Plaintiff. See ECF No. 1 (Complaint), pg. 19.  Plaintiff alleges that his witnesses were denied and that the investigatory officer's replacement, Defendant Osuna, was just as much subject to personal bias against Plaintiff as the originally proposed investigatory officer, Fletcher. See id. at 13-15.

In this case, as discussed above, the complaint indicates that Plaintiff was provided a new hearing as the associate warden ordered the RVR to be re-issued and the disciplinary proceeding to be "reheard."  See ECF No. 1 (Complaint), pg. 15.  Again, Plaintiff does not provide any details as to the new hearing.  As a result, it is possible the new hearing provided an adequate post-deprivation remedy to the extent violations occurred with respect to the original hearing, in which case Plaintiff would not be able to state a claim.  It is also possible that procedural due process protections were not provided with respect to the new hearing.  As with his claims against Defendants Bowen and Nedelcu, Plaintiff will be provided an opportunity to amend to allege further facts to establish, if he can, a procedural due process violation as against Defendants Osuna, Footman, Fletcher, and Orman.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by

amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's original complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated:  June 27, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE